# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

LAMEEKA MCKINNEY                                          CIVIL ACTION

VERSUS                                                         NO. 14-1847

KEITH DEVILLE, WARDEN                                SECTION: "F"(3)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Lameeka McKinney, a state prisoner, pleaded guilty to manslaughter under Louisiana law.  In this proceeding, she claims that she was denied her constitutional right to be represented by the privately retained counsel of her choosing.  Because of the nature of her claim, a detailed summary of the events leading up to her guilty plea is necessary.

The record reflects that petitioner and Robert Scott were indicted for the second degree murder of their child.  In the ensuing criminal proceedings, petitioner was represented by Martin Regan, and co-defendant Scott was represented by Gary Wainwright.  During the course of the proceedings, the Louisiana Supreme Court suspended Wainwright from the practice of law due to

an unrelated infraction.  Wainwright then took a job as a paralegal in Regan's office, and Frank

DeSalvo took over the representation of co-defendant Scott.

On January 28, 2013, the state filed a motion for a conflict of interest inquiry based on the

fact that Wainwright, as part of Regan's team, was performing work on petitioner's case despite

the fact that he had previously represented co-defendant Scott concerning the same crime.  The

state district court held an evidentiary hearing on that issue on January 29, 2013.  At the conclusion

of that hearing, the judge found that Regan was in fact laboring under a conflict of interest and

ordered that he would not be allowed to represent petitioner in the criminal case.   Immediate

supervisory review was sought, and the Louisiana Fifth Circuit Court of Appeal denied relief,

holding:

> The trial court correctly determined that counsel for relator, Martin Regan,
> is laboring under an actual conflict of interest created when co-defendant's former
> counsel, who was hired by Mr. Regan's firm as a paralegal, actually performed
> work on relator's case.  An attorney laboring under an actual conflict of interest
> cannot render effective legal assistance to the defendant he is representing.  State
> v. Cisco, 01-2732 (La. 12/3/03), 861 So.2d 118, 129.  If an actual conflict exists,
> there is no need for a defendant to prove that he was also prejudiced thereby.  Id. at
> 130.  Here, the co-defendant's former counsel testified that he performed work on
> relator's case prior to anyone speaking to relator about any potential conflict.
>
> Accordingly, this writ application is denied.  Relator's request for a stay of
> these proceedings is also denied.[1]

Five months later, on May 20, 2013, Regan filed a motion to re-enroll as petitioner's

counsel, which the trial court ordered stricken after a hearing, again citing Regan's conflict of

interest.[2]  Supervisory relief was again sought, and the Louisiana Fifth Circuit Court of Appeal

again denied relief, holding:

---

[1] State v. McKinney, No. 13-K-68 (La. App. 5th Cir. Jan. 30, 2013); State Rec., Vol. 1 of 8.
[2] State Rec., Vol. 7 of 8, transcript of June 21, 2013; State Rec., Vol. 1 of 8, minute entry dated June 21, 2013.

> On the showing made, we find no error in the trial court's "striking" the motion to enroll as counsel filed by Martin Regan.  The issue of Mr. Regan's representation of Lameeka McKinney has previously been ruled upon by the trial court.  On January 29, 2013, the trial court ordered that Mr. Regan be removed as counsel for relator due to an actual conflict of interest.  Relator thereafter sought review of the trial court's ruling in this Court.  On January 30, 2013, this Court agreed with the trial court's determination that Mr. Regan had an actual conflict of interest and denied relator's writ application.  State v. McKinney, 13-68 (La. App. 5 Cir. 1/30/13) (unpublished writ disposition).  On March 4, 2013, this Court denied relator's application for rehearing.
>
> We find that reconsideration of this issue is not warranted.  No subsequent record has been presented to establish that this Court's determination was patently erroneous or produced unjust results.  Although Mr. Regan did subsequently present the trial court with relator's affidavit/conflict of interest waiver, we find that such waiver does not mandate enrollment of counsel.  Wheat v. United States, 486 U.S. 153, 162, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).
>
> Accordingly, we find no error in the trial court's ruling on relator's motion to enroll.  This writ application is denied.[3]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[4]

On March 5, 2014, petitioner, through counsel, filed a federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that she was being denied her right to be represented by the privately retained counsel of her choosing, i.e. Martin Regan.[5]  However, while that federal application was pending, petitioner, now represented by attorney Cezar J. Vasquez, pleaded guilty to an amended charge of manslaughter pursuant to a negotiated plea agreement, and she was sentenced to a term of fifteen years imprisonment on July 10, 2014.[6]  On August 11, 2014, United States District Judge Martin L.C. Feldman then dismissed petitioner's § 2241 application

---

[3] State v. McKinney, No. 13-K-548 (La. App. 5th Cir. Aug. 9, 2013); State Rec., Vol. 1 of 8.
[4] State v. McKinney, 129 So.3d 535 (La. 2013); State Rec., Vol. 1 of 8.
[5] McKinney v. Norman, Civ. Action No. 14-489 (E.D. La.).
[6] Supplemental State Rec., Vol. 2 of 2, transcript of July 10, 2014; Supplemental State Rec., Vol. 2 of 2, minute entry dated July 10, 2014; Supplemental State Rec., Vol. 2 of 2, guilty plea form.

"without prejudice to petitioner's right to pursue habeas corpus relief through a petition timely filed under 28 U.S.C. § 2254 after exhausting her available state court remedies."[7]

Two days later, petitioner, through counsel, filed the instant federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254, again claiming that her constitutional rights were violated because she was denied the opportunity to be represented by the privately retained counsel of her choosing.[8]  The state filed a response arguing that this federal proceeding should be dismissed in light of the fact that petitioner had a direct appeal still pending in the state courts.[9] However, the state's argument thereafter became moot because, on March 25, 2015, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction and sentence, holding:

> Appellate counsel's brief contains no assignments of error and sets forth that it is filed in accordance with Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and State v. Jyles, 96-2669 (La. 12/12/97); 704 So.2d 241 (*per curiam*), which set forth the procedure appellate counsel should follow when, upon conscientious review of a case, counsel finds an appeal would be wholly frivolous.
>
> In his brief, appellate counsel reviewed the procedural history of the case and stated that, after a review of the record, he could not find any non-frivolous issues to present on appeal.  Appellate counsel specifically noted that Defendant entered an unqualified guilty plea, which waived all non-jurisdictional defects. Appellate counsel observed that Defendant indicated to the trial court that she had not been forced, coerced, or threatened to enter the guilty plea and that she understood her rights, the charge, and the sentence she would receive.  Counsel submits that Defendant's answers throughout the guilty plea colloquy and sentencing appeared to be sensible, direct, articulate, and well-mannered. Additionally, counsel contends the plea bargain was very advantageous to Defendant.
>
> Appellate counsel acknowledged the heated dispute regarding Defendant's desire for representation by Martin Regan and his subsequent removal due to a conflict, but found that all issues concerning that aspect of the case appeared to have been fully litigated in both this Court and the Louisiana Supreme Court.  He

---

[7] McKinney v. Norman, Civ. Action No. 14-0489 (E.D. La. Aug. 11, 2014).
[8] Rec. Doc. 1.
[9] Rec. Doc. 10.

noted that Defendant might retain federal habeas rights regarding that issue beyond the scope of this direct appeal.

Having determined there are no non-frivolous issues to raise on appeal, appellate counsel requests to withdraw from further representation of Defendant. Appellate counsel advised this Court that he notified Defendant of her right to file a *pro se* brief in this appeal, and we note that this Court sent Defendant a letter by certified mail informing her that an Anders brief had been filed and that she had a right to file a *pro se* supplemental brief.  Defendant chose not to file a *pro se* brief.

This Court has performed an independent, thorough review of the pleadings, minute entries, bill of information, and transcripts in the appellate record.  Our independent review reveals no non-frivolous issues or trial court rulings that could have been raised on appeal.

We have specifically considered the issue of Defendant's right to counsel of choice and whether it should have been raised on direct appeal.  After Mr. Regan was removed from the case, Defendant filed a supervisory writ with this Court. Although the writ application was denied, we note that one member of the panel dissented.  Additionally, in a subsequent writ application to the supreme court regarding the denial of Mr. Regan's motion to re-enroll as counsel, Justice Johnson indicated that she would have granted the writ and explained,

> The Sixth Amendment right to counsel includes a criminal defendant's right to secure counsel of his or her choice. Accordingly, a court must give considerable deference to a defendant's choice of counsel, and disqualification "should be a measure of last resort."  In this instance, the defendant consulted with an independent attorney, executed an affidavit with a waiver of conflict of interest and chose to retain Mr. Martin Regan as her counsel.  Therefore, I believe the trial court erred in denying defense counsel's Motion to Enroll.

[Internal citations omitted.]  McKinney, 129 So.3d at 535.

The prior denial of supervisory writs does not preclude reconsideration of an issue on appeal, nor does it prevent the appellate court from reaching a different conclusion.  State v. Williams, 12-68 (La.App. 5 Cir. 10/9/13); 128 So.3d 359, 368. Thus, this was a potential issue that could have been raised on direct appeal. However, Defendant entered an unqualified guilty plea and, thus, failed to preserve any pre-trial rulings for appeal and waived all non-jurisdictional defects.[FN3] State v. Hoppens, 13-948 (La.App. 5 Cir. 4/23/14); 140 So.3d 293, 299. Accordingly, we find that the ruling denying Defendant her right to counsel of choice was not preserved for appellate review.  We note that any claim for ineffective assistance of counsel for trial counsel's failure to enter a Crosby[FN4] plea in order to reserve Defendant's right to appeal the ruling denying her right to counsel of choice is more appropriately raised in an application for post-conviction relief, as opposed to direct appeal, where an evidentiary hearing may be held to

fully explore the claims.  State v. Washington, 03-1135 (La.App. 5 Cir. 1/27/04); 866 So.2d 973, 983.

> [FN3]  Under State v. Crosby, 338 So.2d 584 (La. 1976), a defendant may reserve specified errors, or adverse pre-trial rulings, for appellate review at the time of a guilty plea.  Failure to specifically reserve the adverse rulings at the time of the guilty plea through a conditional plea results in the ruling not being preserved for appeal.  Jurisdictional defects that are not waived, regardless of an unconditional guilty plea, are those which, even conceding a defendant's factual guilt, do not permit conviction of the charged offense.   The supreme court listed the following examples of jurisdictional defects:  (1) the lack of jurisdiction of the sentencing court, (2) the conviction represents double jeopardy, (3) the prosecution had prescribed at the time it was instituted, (4) the State lacked legal power to try the defendant for the charged offense, (5) the statute under which prosecution is brought is unconstitutional, (6) the charge in the indictment does not constitute a crime, and (7) certain types of patent errors that prevent conviction for the offense.  Id. at 588.

> [FN4]  State v. Crosby, supra.

Upon review of the record, we find the indictment properly charged Defendant and plainly and concisely stated the essential facts constituting the offense charged.  It also sufficiently identified Defendant and the crime charged.  See La.C.Cr.P. arts. 462-66.  Further, the minute entries reflect that Defendant and her counsel appeared at all crucial stages of the proceedings against her, including her arraignment, guilty pleas, and sentencing.  As such, there are no appealable issues surrounding Defendant's presence.

Also, once a defendant is sentenced, only those guilty pleas that are constitutionally infirm may be withdrawn by appeal or post-conviction relief.  A guilty plea is constitutionally infirm if it is not entered freely and voluntarily, if the Boykin[FN5] colloquy is inadequate, or when a defendant is induced to enter the plea by a plea bargain or what he justifiably believes was a plea bargain and that bargain is not kept.  State v. McCoil, 05-658 (La.App. 5 Cir. 2/27/06); 924 So.2d 1120, 1124.

> [FN5]  Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

The record reveals no constitutional infirmity in Defendant's guilty plea.  The record shows that Defendant was aware she was charged with and pleading guilty to the crime of manslaughter.  On the waiver of rights form and during the

colloquy with the trial judge, Defendant was advised of her right to a jury trial, her right to confrontation, and her privilege against self-incrimination as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Defendant signed the waiver of rights form, indicating that she understood she was waiving these rights by pleading guilty.  During the colloquy with the trial judge, Defendant also indicated that she understood those rights.  During her guilty plea colloquy and in her waiver of rights form, Defendant indicated that she had not been forced, coerced, or threatened into entering her guilty pleas.  Defendant was informed during the colloquy and in the waiver of rights form of the maximum and minimum[FN6] sentence and of the actual sentence that would be imposed if her guilty plea was accepted.  She was also informed during the colloquy and in the waiver of rights form that if the court accepted her guilty plea, she would not have the right to assert an allegation or defect such as an illegal arrest, illegal search and seizure, illegal confession, illegal lineup, or the fact that the State might not be able to prove the charge or that a jury would find her not guilty.  After the colloquy with Defendant, the trial court accepted Defendant's plea as knowingly, intelligently, and voluntarily made.

> [FN6]  It is noted that the trial judge erroneously advised Defendant that the minimum penalty was ten years imprisonment at hard labor, when there is no minimum penalty under La. R.S. 14:31.  La.C.Cr.P. art. 556.1(A)(1) provides that, prior to accepting a guilty plea, the court must personally inform the defendant of any mandatory minimum penalty and the maximum possible penalty.  Any variance from the procedures required by Article 556.1 which does not affect substantial rights of the accused shall not invalidate the plea. La.C.Cr.P. art. 556.1(E).  Violations of La.C.Cr.P. art. 556.1 that do not rise to the level of Boykin violations are subject to harmless error analysis.  State v. Craig, 10-854 (La.App. 5 Cir. 5/24/11); 66 So.3d 60, 64.  In the instant case, the trial court's erroneous advisal of a minimum sentence did not cause prejudice since Defendant knew the sentence she would receive, and she received that sentence.  The advisal of the agreed upon sentence is sufficient for compliance with La.C.Cr.P. art. 556.1.  See State v. Craig, supra; State v. Broadway, 40,569 (La.App. 2 Cir. 1/25/06); 920 So.2d 960, 963.

In her *pro se* motion for appeal, Defendant indicated that she wanted to appeal her guilty plea, that she had constitutional issues still pending in federal court, that her appointed public defender did not tell her about the current status of her federal habeas filing during the plea proceedings, and that she did not waive her pending federal habeas filing seeking reinstatement of her counsel of choice.  The record shows that prior to pleading guilty, Defendant filed a *pro se* writ of habeas corpus in federal court challenging her pre-trial detention based upon the state court's denial of her right to counsel of choice when the trial court disqualified

7

retained counsel for a conflict of interest.  After Defendant pled guilty, the federal court dismissed her habeas petition on the basis it was rendered moot upon her conviction.  To the extent Defendant may have an ineffective assistance of counsel claim relating to the entry of her guilty plea while her federal habeas petition was pending, we again find that such claims are more appropriately addressed in an application for post-conviction relief.  See State v. Washington, *supra*.

With regard to Defendant's sentence, La.C.Cr.P. art. 881.2(A)(2) precludes a defendant from seeking review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea.  State v. Washington, 05-211 (La.App. 5 Cir. 10/6/05); 916 So.2d 1171, 1173.  Here, Defendant's sentence was imposed in accordance with the terms of the plea agreement set forth in the record at the time of the plea.  Nevertheless, we note that Defendant's sentence falls within the sentencing range set forth in the statute.  See La. R.S. 14:31.  Moreover, Defendant's plea agreement was beneficial to her in that she received a 15-year sentence for a manslaughter conviction when she could have received 40 years, and she could have received a life sentence if she had been convicted of second degree murder, the original charge.

Based on the above discussion, we agree with appellate counsel that there are no non-frivolous issues that could be raised on appeal.  Accordingly, Defendant's conviction and sentence are affirmed.[10]

On June 15, 2016, the undersigned ordered the state to file a supplemental response in this matter addressing the following issues:

1.    Was petitioner's pretrial litigation of her issues concerning the denial of counsel of choice sufficient to constitute exhaustion of her claims for federal purposes?  If not, were the claims exhausted on direct review after her conviction?

2.    Did the entry of petitioner's unconditional guilty plea result in a waiver of her claims so as to prevent federal review?

3.    If the Court determines that the claims are exhausted, have not been waived, and are not otherwise procedurally barred from federal review, is petitioner entitled to relief on the merits?

---

[10] State v. McKinney, 169 So.3d 679, 682-85 (La. App. 5th Cir. 2015); Rec. Doc. 12-1.

The state was ordered to file its supplemental response on or before July 15, 2016.  Petitioner was informed that if she desired to file a reply to the state's supplemental response, any such reply had to be filed on or before August 1, 2016.[11]  The state filed its supplemental response as ordered,[12] and petitioner filed no reply.

**Timeliness**

As an initial matter, the Court notes that petitioner's federal application is clearly timely. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring her Section 2254 claims within one (1) year of the date on which her underlying criminal judgment becomes "final."  28 U.S.C. § 2244(d)(1)(A).[13]  On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).  However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires."  Id. at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
>
> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review.  See Foreman, 383 F.3d at 338-39.  As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal.  See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693.  Louisiana Supreme Court Rule X, § 5(a) states that an application "to review a judgment of the court of appeal either after an

---

[11] Rec. Doc. 16.
[12] Rec. Doc. 17.
[13] Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

appeal to that court ... or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal."

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

Accordingly, petitioner's state criminal judgment became final for AEDPA purposes on April 25, 2014, thirty days after the Court of Appeal's judgment, when petitioner's period expired for seeking further direct review by the Louisiana Supreme Court.[14]   Because her federal application was already pending at that point, the statute of limitations presents no obstacle.

## Exhaustion

In its supplemental response, the state concedes that petitioner's pretrial litigation of her claims is sufficient for her claim to be considered exhausted for federal purposes.[15]

## Petitioner's Claim

Petitioner's claim in this lawsuit concerns whether her constitutional rights were violated when she was denied her choice of privately retained counsel.  The first issue this Court must consider is whether petitioner waived this claim by entering an unconditional guilty plea.  In its supplemental response, the state argues that the guilty plea did in fact waive the claim.[16]  As noted, petitioner was given an opportunity to file a reply to that supplemental response,[17] but she opted not to do so.  Nevertheless, it appears that the guilty plea did not result in a waiver of the claim. In a federal criminal case addressing this issue, the United States Fifth Circuit Court of Appeals held:

> The Supreme Court … has recently held that the "erroneous deprivation of the right to counsel of choice" is a "structural error" in violation of the Sixth Amendment

---

[14] On August 29, 2016, this Court's staff contacted the Clerk of the Louisiana Supreme Court and was advised that petitioner did not seek review of the Court of Appeal's judgment on direct review.
[15] Rec. Doc. 17, p. 2.
[16] Rec. Doc. 17, pp. 2-6.
[17] Rec. Doc. 16.

and is not subject to harmless-error analysis.  <u>United States v. Gonzalez-Lopez</u>, 548 U.S. 140, 150-52, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006).  Other "structural errors" include the denial of counsel, the denial of the right of self-representation, and the denial of the right to a public trial.  <u>Id</u>. at 149, 126 S.Ct. 2557.  In <u>Gonzalez-Lopez</u>, the Court specifically noted that:

> [T]he choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial.  In light of these myriad aspects of representation, the erroneous denial of counsel bears directly on the framework within which the trial proceeds, or indeed on whether it proceeds at all ....  Many counseled decisions, including those involving plea bargains and cooperation with the government, do not even concern the conduct of trial at all.

<u>Id</u>. at 150, 126 S.Ct. 2557 (internal quotation omitted).  Because Gonzalez-Lopez had been erroneously denied the counsel of his choice, the Supreme Court reversed his conviction and remanded the case for a new trial.

While <u>Gonzalez-Lopez</u> involved a trial rather than a guilty plea, it is obvious that the choice of counsel may seriously impact a defendant's decision to plead guilty.  If a defendant is erroneously denied the counsel of his choice, it is a structural error in the trial that brings into question the voluntary and intelligent character of the guilty plea itself.  <u>See</u> <u>Tollett v. Henderson</u>, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).  But it is not subject to harmless-error analysis, as that "would be a speculative inquiry into what might have occurred in an alternate universe."  <u>Gonzalez-Lopez</u>, 548 U.S. at 150, 126 S.Ct. 2557.  As such, even in cases where a defendant has pled guilty, we must consider whether the district court erroneously denied a defendant the right to his counsel of choice, and waiver will not apply.

<u>United States v. Sanchez Guerrero</u>, 546 F.3d 328, 332 (5th Cir. 2008); <u>accord</u> <u>United States v. Smith</u>, 618 F.3d 657, 663 (7th Cir. 2010).

However, even if the Court assumes for the purposes of this decision that petitioner's claim was not waived simply because she entered an unconditional guilty plea, the claim nevertheless does not entitle her to relief for the following reasons.

As noted, the state courts denied petitioner's claim on the merits when it raised and fully litigated in the proceedings prior to the entry of her plea.  Under the standards of review mandated

by the AEDPA, this federal court must therefore defer to that decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

Here, the state court's decision was neither contrary to nor involved an unreasonable application of United States Supreme Court precedent. On the contrary, the United States Supreme Court has held:

> [T]he Sixth Amendment secures the right to the assistance of counsel, by appointment if necessary, in a trial for any serious crime. We have further recognized that the purpose of providing assistance of counsel is simply to ensure that criminal defendants receive a fair trial, and that in evaluating Sixth Amendment claims, *the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.* Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, *the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.*

Wheat v. United States, 486 U.S. 153, 158-59 (1988) (emphasis added; citations and internal quotation marks omitted). For example, the Supreme Court made clear in Wheat that courts must act not only to protect the defendant's rights but also to ensure the integrity of the proceedings: "Federal courts have *an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.* … Not only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation." Wheat, 486 U.S. at 160 (emphasis added).

To that end, it must be noted that "[w]hile permitting a single attorney to represent codefendants is not *per se* violative of constitutional guarantees of effective assistance of counsel, *a court confronted with and alerted to possible conflicts of interest must take adequate steps to ascertain whether the conflicts warrant separate counsel.*" Id. at 159-60 (emphasis added;

14

quotation marks, citation, and ellipsis omitted).  Therefore, as the United States Fifth Circuit Court of Appeals has aptly summarized:  "Assistance of counsel includes the right to select an attorney of one's choosing.  This right, however, is not absolute.  Rather, the right to counsel of choice is limited if that counsel has an actual conflict of interest or a serious potential conflict of interest that may arise during trial.  Therefore, while we recognize a presumption that a defendant is entitled to counsel of choice, that presumption may be rebutted by a showing of actual or potential conflicts of interest."  United States v. Jackson, 805 F.3d 200, 202 (5th Cir. 2015) (citations omitted).

It is likewise clear that the fact that a defendant may be willing to waive a conflict of interest is not determinative.  On the contrary, the United States Supreme Court has expressly held: "[W]here a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented."  Wheat, 486 U.S. at 162; accord Jackson, 800 F.3d at 203 ("A waiver is not sufficient to remedy constitutional infirmity because the courts are obligated to conduct proceedings within the ethical standards of the profession and appear fair to the public." (quotation marks and ellipsis omitted)).  The same rule applies even if an actual conflict has not yet become manifest, because "court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."  Wheat, 486 U.S. at 163.  On that point, the Supreme Court has further explained:

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass,

> darkly.   The likelihood and dimensions of nascent conflicts of interest are
> notoriously hard to predict, even for those thoroughly familiar with criminal trials.
> It is a rare attorney who will be fortunate enough to learn the entire truth from his
> own client, much less be fully apprised before trial of what each of the
> Government's witnesses will say on the stand.  A few bits of unforeseen testimony
> or a single previously unknown or unnoticed document may significantly shift the
> relationship between multiple defendants.

Id. at 162-63.

In the instant case, the testimony at the state hearing established that neither petitioner nor

co-defendant Scott had been advised of the conflict of interest issues implicated by Wainwright's

prior representation of Scott and his subsequent work as part of Regan's team defending petitioner

with respect to the same crime.  Although there is no suggestion that either Wainwright or Regan

acted in bad faith or actually compromised the rights of either petitioner or co-defendant Scott, the

evidence showed that Wainwright had in fact worked on petitioner's case without properly

advising either her or Scott in advance.  In light of that undisputed past transgression, as well as

the possibility that similar transgressions might well occur in the future unless other counsel was

secured for petitioner, the trial court could require that petitioner be represented by an attorney not

affiliated with Regan's firm in order to ensure both petitioner's rights and the integrity of the court

proceedings.  This is true even though another court could have legitimately made the contrary

decision.  As the United States Supreme Court observed in similarly denying relief in Wheat:

> Viewing the situation as it did before trial, we hold that the District Court's
> refusal to permit the substitution of counsel in this case was within its discretion
> and did not violate petitioner's Sixth Amendment rights.  Other district courts might
> have reached differing or opposite conclusions with equal justification, but that
> does not mean that one conclusion was "right" and the other "wrong".  The District
> Court must recognize a presumption in favor of petitioner's counsel of choice, but
> that presumption may be overcome not only by a demonstration of actual conflict
> but by a showing of a serious potential for conflict.  *The evaluation of the facts and
> circumstances of each case under this standard must be left primarily to the
> informed judgment of the trial court.*

Id. at 164 (emphasis added).  In light of this deference, coupled with the additional measure of deference mandated by the AEDPA, it simply cannot be said that the state court decision was contrary to or involved an unreasonable application of United States Supreme Court precedent. Therefore, this claim should be denied.

Out of an abundance of caution, the undersigned notes that petitioner also argues that the trial court failed conduct a hearing in accordance with United States v. Garcia, 517 F.2d 272 (5th Cir. 1975).[18]  As an initial matter, it must be noted that the Fifth Circuit mandated the use the Garcia procedures in criminal proceedings in the *federal, not state*, courts, and the undersigned is unaware of any case directly applying Garcia in the context of a habeas review of a state court

---

[18] In Garcia, the United States Fifth Circuit Court of Appeals held:

> [W]e instruct the district court to follow a procedure akin to that promulgated in F.R.Crim.P. 11 whereby the defendant's voluntariness and knowledge of the consequences of a guilty plea will be manifest on the face of the record.  Cf. Boykin v. Alabama, 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274, 280 (1969); McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418, 425 (1969); United States v. Vera, 514 F.2d 102, 104 (5th Cir. 1975); United States v. Davis, 493 F.2d 502 (5th Cir. 1974).  As in Rule 11 procedures, the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest.  The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation.  Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.  Cf. United States v. Foster, 469 F.2d 1 (1st Cir. 1972).  It is, of course, vital that the waiver be established by "clear, unequivocal, and unambiguous language."  National Equipment Rental v. Szukhent, 375 U.S. 311, 332, 84 S.Ct. 411, 423, 11 L.Ed.2d 354, 367-68 (1964).  Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection.  Recordation of the waiver colloquy between defendant and judge will also serve the government's interest by assisting in shielding any potential conviction from collateral attack, either on Sixth Amendment grounds or on a Fifth or Fourteenth Amendment "fundamental fairness" basis.

United States v. Garcia, 517 F.2d 272, 278 (5th Cir. 1975), abrogated on other grounds by Flanagan v. United States, 465 U.S. 259, 263 & n.2 (1984)

17

conviction.  See Hill v. Tanner, Civ. Action No. 12-369, 2012 WL 4059899, at *8 (E.D. La. July 5, 2012), adopted, 2012 WL 4059898 (E.D. La. 2012).  Nevertheless, even if state courts are under an obligation to hold such hearings in some circumstances, this is not one of them.  Where, as here, the trial court has determined that "a waiver of trial counsel's conflicts of interest was not an option, a Garcia hearing (to, *inter alia*, ensure waiver is knowing and voluntary) [is] not necessary."  United States v. Amador, 457 Fed. App'x 415, 416 (5th Cir. 2012).

## RECOMMENDATION

It is therefore **RECOMMENDED** that federal application for habeas corpus relief filed by Lameeka McKinney be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[19]

New Orleans, Louisiana, this thirteenth day of October, 2016.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[19] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.